**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GARY SMITH,

                              Plaintiff,

            - v -                                                    Civ. No. 9:08-CV-469
                                                                           (GLS/RFT)

M. GRAZIANO, *Acting Superintendent/Deputy Superintendent*
*of Administration, Greene Correctional Facility*; PHILIP HEATH;
*Deputy Superintendent of Programs, Greene Correctional*
*Facility*; JOHN DOE, *Correctional Officer #1, Greene*
*Correctional Facility*; JOHN DOE, *Correctional Officer #2,*
*Greene Correctional Facility*; JOHN DOE, *Correctional Officer #3,*
*Greene Correctional Facility*; and JOHN DOE, *Ministerial Program*
*Coordinator, Greene Correctional Facility*,

                              Defendants.

**APPEARANCES:**                               **OF COUNSEL:**

GARY SMITH
Plaintiff, *Pro se*
***Last Known Address*:**
114-12 Bedell Street
Jamaica, New York 11343

HON. ANDREW M. CUOMO                    STEVEN H. SCHWARTZ, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants Graziano and Heath[1]
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

        On April 30, 2008, *pro se* Plaintiff Gary Smith filed a civil rights Complaint alleging the

Defendants violated his rights established by the First Amendment to the United States Constitution

---

[1] Several Defendants remain unidentified, and thus, unserved.  Only Defendants Graziano and Heath have
appeared in this action.

and the Religious Land Use and Institutionalized Persons Act (RLUIPA), codified at 42 U.S.C. § 2000cc, *et seq.* Dkt. Nos. 1, Compl.;[2] 22, Am. Compl. He further alleges violations of Articles 1, 3, and 11 of the New York State Constitution as well as New York Corrections Law § 610. The basis for Plaintiff's lawsuit is his contention that the Defendants infringed upon and interfered with his right to freely exercise his religion when he was denied the opportunity to attend Protestant religious services on three separate occasions during his incarceration at Greene Correctional Facility in 2006.

Currently pending before the Court is Defendants Graziano's and Heath's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 47. Despite being granted multiple extensions of time, Dkt. Nos. 48, 52, 56, & 59, Plaintiff has failed to respond to the Motion. For the reasons that follow, it is recommended that Defendants' Motion be **granted**, and Plaintiff's Amended Complaint be **dismissed** in its entirety.

## I. FAILURE TO PROSECUTE

At the outset, we are compelled to note that, not only has Plaintiff failed to respond to Defendants' Motion for Summary Judgment, but he has also failed to communicate with this Court in over six months, causing this Court to wonder whether Plaintiff has abandoned his case.

Throughout this litigation, Plaintiff has stumbled over his responsibility to timely ensure that the Court (and his adversaries) has a current address for him. Plaintiff's shirking of his duty has resulted in the return of multiple documents sent to him. *See* Mail Returned to the Court, Dkt. Nos.

---

[2] At the time Plaintiff initiated this lawsuit, he was housed at the Anna M. Kross Center (AMKC), located in East Elmhurst, New York. Since the allegations contained in his Complaint (and Amended Complaint) concern matters that took place during his incarceration in 2006 at Greene Correctional Facility, venue was properly maintained in this District. 28 U.S.C. § 1391(b). The address currently on file for Plaintiff is a civilian address and appears to be inaccurate. *See infra* Part I.

34, 42-44, & 61-62.  Time and again, Plaintiff belatedly provided current addresses to the Court, resulting in the Clerk of the Court having to re-serve documents that had been returned as undeliverable.  *See* Notification of Updated Address, Dkt. Nos. 7, 8, 24, 28, 36, 37, 39, 53, 60. Plaintiff's belated notices of changes in his address have stymied the effective administration of this case, and, yet, this is not the only negative effect caused by Plaintiff sidestepping his responsibility. For example, earlier in the litigation, Plaintiff's failure to timely update his address directly impacted the Defendants' ability to serve responses to Plaintiff's discovery demands.  *See* Dkt. No. 41, Order, dated Apr. 6, 2009, at p. 2 (detailing the Defendants' effort to serve Plaintiff with their discovery responses, only to have such responses returned on multiple occasions).  Thus, Defendants too have incurred extra-expenses by having to re-serve discovery responses.  We conclude that Plaintiff's failure to ensure that his address is current not only burdened the Court and Defendants with extra expenses, but also caused confusion and delay.

Plaintiff's apathetic approach to this litigation is not only reflected by his failure to update his address.  He has also, inexplicably, failed to respond to Defendants' Motion for Summary Judgment, which was filed approximately nine months ago, on June 9, 2009, and which we believe Plaintiff received.  Dkt. No. 47.  The Motion was served on Plaintiff at his then-current address, the Anna M. Kross Center (AMKC).  *Id.*  Though Plaintiff twice updated his address thereafter, there has been no indication from Defendants that their Motion was returned to them as undeliverable. Furthermore, on numerous occasions, Plaintiff sought, and was granted, extensions of time to respond to Defendants' Motion for Summary Judgment.  *See* Dkt. Nos. 51, 52, 56, & 59.  We note that in one of his extension requests, Plaintiff sought to distinguish his claim for relief from one of

the cases Defendants relied upon in seeking summary judgment.[3]  Dkt. No. 51.  In view of these

facts, we can safely presume that Plaintiff indeed received a copy of that Motion, as well as the

notice that, in accordance with this District's Local Rules 7.1(a)(3) and 56.2, accompanied the

Motion and warned Plaintiff of the consequences that could occur should he fail to respond to the

Defendants' Motion.  Dkt. No. 47 at pp. 1-2.  Similarly, Court Orders/Notices that were resent in

September 2009 to Plaintiff's last known address have not been returned as undeliverable, thus we

can presume that Plaintiff received these mailings as well, and that he is aware of the gravity of a

motion for summary judgment.  *See Young v. City of Syracuse Dep't of Public Works*, 307 Fed.

Appx. 502, 2009 WL 136920, at *1 (2d Cir. Jan. 21, 2009) (unpublished opinion) ("[T]he failure

of a district court to apprise *pro se* litigants of the consequences of failing to respond . . . to a motion

for summary judgment is ordinarily grounds for reversal." (quoting *Vital v. Interfaith Med. Ctr.*, 168

F.3d 615, 620 (2d Cir. 1999))).

        Despite all the above precautions and warnings provided to Plaintiff, he has failed to oppose

Defendants' Motion for Summary Judgment.  And, it further appears that Plaintiff has again failed

to notify the Court of a change in his address.  The last communication this Court received from

Plaintiff is a letter, dated August 26, 2009, wherein he provides an updated civilian address.  Dkt.

No. 60.  Though documents mailed to this address have not been returned to the Court, in light of

Plaintiff's apparent abandonment of this case, a Chambers staff member conducted a review of the

New York State Department of Corrections (DOCS) Inmate Locator Website.  According to the

information available on that website, as of December 7, 2009, Plaintiff was returned to prison from

---

[3] In his letter to the Court, Plaintiff noted that the Defendants cited *Hanton v. Mathiau*, 29 Fed. Appx. 772, 773 (2d Cir. 2000) in support of their Motion for Summary Judgment.  Plaintiff advised the Court that the *Hanton* case is distinguishable from his because it is a First Amendment case and not one brought pursuant to RLUIPA, which, according to Plaintiff, "is evaluated under a different standard."  Dkt. No. 51 at pp. 1-2.

parole and is currently housed at Fishkill Correctional Facility.  *See* Attach. 1, http://nysdocslookup.docs.state.ny.us.  Yet, he has not notified the Court of his change in address, nor has he responded to Defendants' Motion.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court.  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962).  "This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases."  *Freeman v. Lundrigan*, 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996) (citing *Rodriguez v. Walsh*, 1194 WL 9688, at *1 (S.D.N.Y. Jan. 14, 1994)).

Moreover, a litigant has the duty to inform the court of any address changes.  As then District Judge Pooler stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions.  It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail.  In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries.  Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany County Corr. Facility Staff*, 1996 WL 172699, at *1 (N.D.N.Y. Apr. 10, 1996) (quoting *Perkins v. King*, No. 84-3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); *see generally* N.D.N.Y.L.R. 41.2(b).

In light of the facts that more than six months have elapsed since Plaintiff communicated with the Court, he has failed to respond to Defendants' Motion, and has failed to maintain a current address with the Court, the Court finds that he has failed to prosecute this matter and presumably has abandoned his case.  Smith's failure to prosecute this matter and provide a change of address warrants a recommendation of dismissal.  *See* FED. R. CIV. P. 41(b) (allowing for dismissal of an action for failure to prosecute); *see also* N.D.N.Y.L.R. 41.2(a) (noting that a plaintiff's failure to

take action for four months is "presumptive evidence of lack of prosecution); N.D.N.Y.L.R. 41.2(b) (authorizing dismissal for failure to provide a change of address). Indeed, courts in the Northern District of New York have dismissed lawsuits brought by *pro se* plaintiffs for failure to provide a current address. *See Rivera v. Goord*, 1999 WL 33117155 (N.D.N.Y. Sept. 14, 1999); *Fenza v. Conklin*, 177 F.R.D. 126 (N.D.N.Y. 1988); *Morgan v. Dardiz*, 177 F.R.D. 125 (N.D.N.Y. 1998); *Williams v. Faulkner*, 1998 WL 278288 (N.D.N.Y. May 20, 1998); *Dansby v. Albany County Corr. Facility Staff*, 1996 WL 172699 (N.D.N.Y. Apr. 10, 1996).

Nevertheless, while we recommend dismissal of this action due to Plaintiff's failure to prosecute, we will continue our analysis of the substance and merits of Plaintiff's claims.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

*-6-*

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . .  interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment.  *See Carey*

*v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B.  Plaintiff's Failure to Respond to the Defendants' Motion

As noted above, Plaintiff has failed to respond to Defendants' Motion for Summary Judgment.  Pursuant to the Local Rules of Practice for the Northern District of New York, "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."  N.D.N.Y.L.R. 7.1(b)(3); *see also Douglas v. New York State Div. of Parole*, 1998 WL 59459, at *1 (N.D.N.Y. Feb. 10, 1998) (noting that plaintiff's failure to oppose defendants' dispositive motion, and his failure to show good cause for the omission, may alone justify granting the motion).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law.  *Id*.; FED. R. CIV. P. 56(c).  Because Plaintiff has failed to raise any question of material fact, the Court will accept the facts as set forth in Defendants' Rule 7.1 Statement of Facts ("7.1 Statement"), supplemented by Plaintiffs' verified Amended Complaint (Dkt. No. 22), as true.  *See Lopez v. Reynolds*, 998 F. Supp. 252, 256 (W.D.N.Y. 1997); N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.").

### C.  John Doe Defendants

In his Original Complaint, filed on April 30, 2008, (Dkt. No. 1), and in the Amended

Complaint, filed on October 8, 2008, (Dkt. No. 22), Plaintiff lists four John Doe Defendants.  To date, Plaintiff has failed to identify these John Does.  At the outset of this litigation, Plaintiff was advised by this Court that he must take steps to ascertain the identities of the three John Doe Defendants should he wish to maintain his suit against them.  Dkt. No. 5 at p. 2.  Within that Order, this Court specifically stated that "Plaintiff is further advised that if [the John Doe Defendants] are not timely served, this action will be dismissed as against them."  *Id*.  Months later, Plaintiff asked permission to amend his Complaint so that he may add another John Doe Defendant and further bolster some factual allegations.  Dkt. No. 20.  In an Order, dated October 8, 2008, this Court noted that Plaintiff could, under Federal Rule of Civil Procedure 15(a), file his Amended Complaint as of right and needn't ask for permission to do so.  Dkt. No. 21.  Nevertheless, we took the opportunity to again warn Plaintiff of the importance of timely identifying and serving the John Doe Defendants to avoid dismissal of his claims against them.  *Id*. at pp. 1-2.  Then, after noticing Plaintiff had not responded to Defendants' Motion, even after being granted multiple extensions of time to do so, this Court issued a Notice/Order advising Plaintiff of the importance of responding to such a motion, and further directing him to submit a status report regarding his efforts to identify each John Doe Defendant.  Dkt. No. 56, Notice/Order, dated Aug. 25, 2009, at p. 3.  Neither a response nor a status report was forthcoming.[4]

----

[4] While Plaintiff has not provided a status report, this Court is familiar with at least some of the efforts undertaken by Plaintiff to ascertain the Doe identities.  During the discovery phase of this action, this Court held a couple of telephone conferences to address some discovery disputes that arose out of Defendants' failure to timely respond to Plaintiff's discovery demands.  *See* Minute Entries, dated April 6, 2009 and July 1, 2009; *see also* Dkt. No. 41, Order, dated Apr. 6, 2009; Dkt. No. 52, Order, dated July 1, 2009.  It is this Court's impression that Plaintiff had made some attempt to heed the Court's warning and ascertain the identities of certain John Doe Defendants.  In his Motions to Compel, and during the subsequent related conferences with the Court, Plaintiff objected to, *inter alia*, Defendants' response to Interrogatory Number 18 and Document Request Number 2.  Therein, Plaintiff sought the names of the Corrections Officers on duty during a specific time period, presumably during the time period he was denied the right to attend Protestant Religious Services.  Defendants responded that such information (charts and records) had been
(continued...)

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[5] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

Because he failed to timely identify and serve the John Doe Defendants, and because as outlined below, no cognizable cause of action is asserted herein, we recommend **dismissal** of all claims asserted against them. *Cooks v. Delpiano*, 2008 WL 4186337, at *1 n.1 (N.D.N.Y. Sept. 10, 2008); *Pravda v. City of Albany*, 178 F.R.D. 25, 26 (N.D.N.Y. 1998).

### D. Exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that for actions brought by prisoners under 42 U.S.C. § 1983, the inmate must first exhaust his or her administrative remedies. The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other

---

[4](...continued)
destroyed in a fire in January 2008. *See* Dkt. No. 45, Pl.'s Mot. to Compel, at p. 5. We thereafter modified and narrowed the request and directed Defendants to respond accordingly. Dkt. No. 52. The Court has not received any further communication from Plaintiff indicating that the Defendants failed to abide by the Court's directives. These efforts possibly concern the three John Doe Corrections Officers. However, it is not clear what steps Plaintiff took to identify the last John Doe Defendant, identified only as the Ministerial Program Coordinator.

[5] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)).  Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action.  *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

In New York State, the administrative remedies consist of a three-step review process.  First, a grievance is submitted to the Inmate Grievance Review Committee (IGRC), a committee comprised of both inmates and facility employees.[6] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b).  The IGRC reviews and investigates the formal complaints and then issues a written determination.  *Id.*  Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision.  *Id.* at § 701.5(c).  Finally, if the superintendent's decision is appealed, the Cental Office Review Committee (CORC) makes the final administrative determination.  *Id.* at § 701.5(d).  Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing *Sulton v. Greiner*, 2000 WL 1809284, at *3 (S.D.N.Y. Dec.11, 2000)); *Petit v. Bender*, 2000 WL 303280, at *2-3 (S.D.N.Y. Mar. 22, 2000).

Within his Amended Complaint, Plaintiff alleges that, after being transferred to Greene Correctional Facility on or about July 18, 2006, he was denied access to Protestant religious services on three separate occasions: July 23, 2006, September 10, 2006, and September 17, 2006.  Am. Compl. at ¶¶ 4, 5, 12, & 16.  He categorically states that he made "a formal complaint with all the

---

[6] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member, or volunteer).  N.Y. COMP. CODES R. & REGS tit.7, § 701.4.

proper personnel departments." *Id*. at ¶ 20.  Without the benefit of Plaintiff's response, the Court accepts as true, and relies primarily, on the following facts as set forth by the Defendants.  With regard to the denial of access to religious services, Plaintiff filed one grievance in 2006 which he appealed to CORC.  Dkt. No. 47-2, Karen Bellamy Decl., dated Mar. 13, 2009, at ¶ 3, Ex. 1; Dkt. No. 47-3, Steven Schwartz, Esq., Affirm., dated June 9, 2009, Ex. B.  Within that Grievance, dated September 17, 2006, Plaintiff complains of being denied the right to practice his religious beliefs "for the past two following Sundays."  Schwartz Affirm., Ex. B.  There is no mention of having been similarly denied access on July 23, 2006, and the ensuing investigation within the Inmate Grievance Program centered solely on the two dates in September.  *Id*.  Accordingly, Plaintiff has failed to fully exhaust his claim with regard to being denied religious services on July 23, 2006, and thus, the Court will only consider whether denial of religious services on two separate dates in September 2006 constitutes a violation of Plaintiff's First Amendment and RLUIPA rights.[7]

---

[7] In liberally construing Plaintiff's Amended Complaint, it appears that the July 23rd event is distinguishable from the September events.  Plaintiff notes that he was transferred to Greene on or about July 18, 2006.  Am. Compl. at ¶ 4.  Upon admission, Plaintiff was reportedly held in the F-1 dormitory.  *Id*. at ¶ 5.  These facts are confirmed by the Defendants' records.  Schwartz Affirm., Ex. A.  Plaintiff was reportedly told on July 23, 2006, that religious services were not available to inmates in the F-1 dormitory and Plaintiff had to wait until he was transferred to another dormitory.  Am. Compl. at ¶ 5.  Thereafter, on or about July 28, 2006, Plaintiff was transferred from the F-1 dormitory unit to the E-2 dormitory unit.  *Id*. at ¶ 7.  On or about July 30, 2006, Plaintiff was allowed to attend weekly communal Protestant services.  *Id*. at ¶ 8.  On the other hand, the September denials, as discussed more fully below, were not made based upon Plaintiff's housing status, but rather, were later revealed to be a result of miscommunication amongst the prison staff.

## E. RLUIPA and First Amendment

### *1. Relevant, Uncontested Facts*[8]

As mentioned above, Plaintiff filed a grievance on September 17, 2006, alleging he was denied religious services on two occasions: September 10, 2006 and September 17, 2006. Schwartz Affirm., Ex. B at p. 3.  Defendant Philip Heath, Deputy Superintendent for Program Services, conducted an investigation and concluded that Protestant religious services did not take place on either September 10 or September 17 due to a lack of communication involving security staff and ministerial services. *Id*. at p. 4.  According to Defendant Heath's Interdepartmental Communication, dated September 27, 2006, the miscommunication arose after security staff had been directed, on September 8, 2006, that all programs, including religious services, had to be conducted on a call-out basis. *Id.*  That information, however, had not been shared with Ministerial Services staff, and thus, services were cancelled due to a lack of call-outs.  *Id.*  Defendant Heath further explained that Ministerial Services staff were advised, via e-mail, on September 14, 2006, of the need for a call-out, and yet, they still failed to conform to the new policy.  As a consequence, services were again

---

[8] Defendants' Motion for Summary Judgment is supported entirely by prison records, namely grievance records. It is well settled that motions for summary judgment must be supported by admissible evidence. *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule.  FED. R. EVID. 802.  Prison grievance records, although hearsay, may be admissible under the business records exception to the hearsay rule.  That exception renders admissible records of "acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge" but only if such records are "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation."  Facts supporting admissibility must be supplied "by the testimony of the custodian or other qualified witness or by certification" that complies with Federal Rule of Evidence 902.  FED. R. EVID. 803(6).  Defendants submit a Declaration from Karen Bellamy, Director of the Inmate Grievance Program, who is the "custodian of the records maintained by the [CORC]." Dkt. No. 47-2 at ¶ 1.  While attached to Ms. Bellamy's Declaration is a certified printout of all the grievances Mr. Smith filed and appealed to CORC, she does not certify the relevant grievance packet.  That packet is instead attached to Assistant Attorney General Schwartz's Affirmation.  Since the proper custodian failed to certify the grievance packet, it is technically inadmissible.  *See Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980).  Nevertheless, we have considered the grievance packet because it appears that in bringing this action and naming certain Defendants, Plaintiff relied upon the same records.

cancelled on that date. *Id.* Defendant Heath concluded his memo with the assurance that these issues had been resolved and no further interruptions to religious services were anticipated. *Id.* The IGRC agreed with the investigation and Plaintiff appealed to the Superintendent. *Id.* at p. 5. On October 4, 2006, Defendant Graziano, in his capacity of Acting Superintendent/Deputy Superintendent of Administration, affirmed the investigation and denied the grievance, finding no substantiation to Plaintiff's claim that he was denied access to religious services by staff. *Id.* at p. 7. Plaintiff appealed that decision to CORC. *Id.* On October 25, 2006, CORC accepted the grievance in part, acknowledged the investigation, and emphasized that appropriate administrative action had been taken to resolve the issues. *Id.* at p. 9.

### 2. *Personal Involvement*

Plaintiff attributes the denial of religious services to the acts of the unnamed Ministerial Program Coordinator, who allegedly advised and counseled Defendants Graziano and Heath. Am. Compl. at ¶¶ 12 & 16. Yet, Plaintiff never articulates the factual basis for holding Defendants Graziano and Heath responsible. Indeed, it appears that the Defendants' inclusion in this lawsuit is based upon their responses to Plaintiff's Grievance. In other words, they are being sued in their supervisory capacity.

#### a. Section 1983

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of *respondeat superior* is inapplicable to § 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[I]t is well

settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983") (citations omitted).

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).

The record before the Court reveals that the extent of Defendants Graziano's and Heath's participation was merely investigating and ruling upon Plaintiff's Grievance. Even Plaintiff's pleading reveals that these two Defendants had limited to no involvement in the events leading up to Plaintiff's denial of religious services attendance. Indeed, Defendant Graziano merely responded to Plaintiff's Grievance, and thus was not personally involved in any wrongdoing. Thus, the only basis from which the Court may find some responsibility as to Graziano and Heath is if we were to determine that Plaintiff's rights had been violated and Defendants Graziano and Heath failed to

remedy the wrong after learning about it.

### b. RLUIPA

Neither the Supreme Court nor the Second Circuit have directly addressed the issue of whether personal involvement is a prerequisite for any valid RLUIPA claim, as it is under § 1983. However, district courts in this Circuit and elsewhere have held that personal involvement is a necessary component of valid RLUIPA claims. *See Joseph v. Fischer*, 2009 WL 3321011, at *18 (S.D.N.Y. Oct. 8, 2009) (concluding that the "personal involvement of a defendant in the alleged substantial burden of plaintiff's exercise of religion is a prerequisite to stating a claim under RLUIPA") (citing cases); *Hamilton v. Smith*, 2009 WL 3199520, at *9 (N.D.N.Y. Sept. 30, 2009) (dismissing RLUIPA claim for want of personal involvement on the part of defendants); *Jacobs v. Strickland,* 2009 WL 2940069, at *2 (S.D. Ohio Sept. 9, 2009) (finding no clear error of law in magistrate judge's holding that personal involvement is a necessary element of RLUIPA claims) (citing *Greenberg v. Hill*, 2009 WL 890521, at *3 (S.D. Ohio Mar. 31, 2009) & *Alderson v. Burnett*, 2008 WL 4185945, at *3 (W.D. Mich Sept. 8, 2008)).  We are in agreement with that conclusion. RLUIPA provides that "[n]o government" shall substantially burden the religious exercise of confined persons, 42 U.S.C. § 2000cc-1(a), and defines "government" as "(i) a State, county, municipality, or other governmental entity created under the authority of the state;(ii) any branch, department, agency, instrumentality, or official of an entity listed in cause (i); and (iii) any other person acting under color of state law," 42 U.S.C. § 2000cc-5(4)(A).  Thus, RLUIPA protects inmates (and others) against *actions taken* by a governmental entity or person acting under color of state law; in other words, there must be some personal involvement on the part of a defendant in the alleged RLUIPA violation.

### 3. First Amendment Analysis

Prisoners still maintain some measure of constitutional protection afforded by the Free Exercise Clause of the First Amendment. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Among those protected rights is the right to participate in congregate religious services. *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993). These rights, however, are balanced against the "interests of prison officials charged with complex duties arising from administration of the penal system," such as maintaining prison security and discipline. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990); *see also Pell v. Procunier*, 417 U.S. 817, 822 (1974). Free exercise claims of prisoners are therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). Courts must analyze free exercise claims by evaluating "1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; 2) whether the challenged practice of the prison officials infringes upon the religious belief; and 3) whether the challenged practice of the prison official furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d at 926 (citations omitted).

A threshold question may be whether the cancellation of two religious services substantially burdened Plaintiff's free exercise rights.[9] *Gill v. Defrank*, 2000 WL 897152, at *1 (S.D.N.Y. July

---

[9] It seems to be a matter of considerable debate in this Circuit as to whether a plaintiff must first establish a "substantial" burden prior to bringing a First Amendment free exercise claim. *See McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004) (questioning whether the substantial burden standard must be applied in constitutional free exercise claims and citing to *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) and *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 170 (3d Cir. 2002) as support for the Third Circuit's policy of explicitly rejecting the substantial burden analysis as violating the precept, articulated in *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990), that "courts must not presume to determine the place of a particular belief in a religion"). In those narrow circumstances, when the Second Circuit has applied the substantial burden test, they defined a substantial burden

(continued...)

**-17-**

6, 2000), *aff'd*, 8 Fed. Appx. 35 (2d Cir. 2001).  We first note that, even if we were to find that

Plaintiff's religious beliefs are sincerely held, the cancellation of the religious services did not

prevent Plaintiff from practicing his religion in other ways.  We also note that the cancellation of

the two events appears to have been isolated occurrences, and not a systematic problem or policy

of denying religious services.   Instead, the cancellations were a result of a breakdown in

communication between prison officials and security staff.  In this regard, Plaintiff does not appear

to challenge the "call-out" practice as violating his rights, in fact, he seems to question why

Protestant services were not made to participate in the same call-out procedure as is the practice with

other denominations.   Dkt. No. 22, Am. Compl. at ¶¶ 9-10.   In this Court's assessment, the

cancellation of two religious services is a *de minimis*, or insubstantial, burden on an inmate's ability

to freely exercise his religion.  *Williams v. Weaver*, 2006 WL 2794417, at *5 n.29 (N.D.N.Y. Sept.

26, 2006) (missing two religious services is not a substantial burden on an inmate's right to practice

his religion); *Persad v. Savage*, 2004 WL 1570286, at *4 & 7 (W.D.N.Y. May 25, 2004) (noting that

the cancellation of two services was isolated and not a "systemic problem" and later, citing *Gill v.

DeFrank*, 8 Fed. Appx. 35, 37 (2d Cir. 2001), for the proposition that the defendants were entitled

to qualified immunity since it was not clearly established that the cancellation of two religious

services constituted a substantial burden on an inmate's right to freely exercise his religion); *see also*

*Hanton v. Mathiau*, 29 Fed. Appx. 772, 773 (2d Cir. 2002) (affirming the district court's dismissal

of the prisoner's free exercise claim based on a denial of services on two separate occasions);

*Graham v. Mahmood*, 2008 WL 1849167, at *10 (S.D.N.Y. Apr. 22, 2008) (citing, *inter alia*,

---

[9](...continued)
as "a situation where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."
*Id*. (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)).

*-18-*

*Hanton* for the proposition that preventing a prisoner who practiced Nation of Islam from making one round of bean pie deliveries had a *de minimis* and insubstantial burden on the prisoner's free exercise rights).  Therefore, whether we apply the substantial burden test or simply look to the level of infringement on Plaintiff's ability to freely exercise his religion, we find that the cancellation of two services did not violate Plaintiff's free exercise rights and such First Amendment claim should be **dismissed.**

### 4.  RLUIPA Analysis

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation of exercise of their religion."[10]  *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).  RLUIPA  provides that

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Thus, Plaintiff can establish a RLUIPA violation by proving that the acts of prison officials constitute a "substantial burden" on his religious exercise without promoting a *compelling* governmental interest that is advanced through *the least restrictive means*.  As such, RLUIPA places a much higher burden on defendants than does the First Amendment, which, as articulated in the

---

[10] RLUIPA was enacted in the wake of the Supreme Court's invalidation of the Religious Freedom Restoration (RFRA) Act of 1993 in *City of Boerne v. Flores*, 521 U.S. 507 (1997), on the grounds that it exceeded Congress's power under section five of the Fourteenth Amendment ("The Congress shall have power to enforce this article by appropriate legislation").  RLUIPA "corrected the constitutional infirmity of RFRA by invoking federal authority under the Spending Clauses to reach any program or activity that receives federal financial assistance, thereby encompassing every state prison."  *Fluellen v. Goord*, 2007 WL 4560597, at *5 (W.D.N.Y. Mar. 12, 2007) (citations omitted).

case of *Turner v. Safely,* requires only that a burden be "reasonably related to legitimate penological interests," not the least restrictive means of protecting compelling governmental interests.

As noted above, Plaintiff has failed to establish that the cancellation of two religious services constituted a substantial burden on his ability to exercise his religious beliefs.  Thus, for the same reasons articulated above, Plaintiff's RLUIPA claim fails and should be **dismissed**.

## III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the John Doe Defendants be **dismissed** due to Plaintiff's failure to timely identify and serve such individuals; and it is further

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 47) be **granted** and the entire Amended Complaint be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Date:   March 16, 2010
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge